IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| GRACE SMITH, MICHAEL O. SMITH, J.A. SMITH (minor), <br><br> v. <br><br> BETHLEHEM TOWNSHIP. | CIVIL ACTION <br><br> NO. 22-3785 |
|---|---|

<u>MEMORANDUM RE: MOTION TO DISMISS</u>

**BAYLSON, J.**                                                                                            January 27, 2023

I.      INTRODUCTION

 This case addresses the separation of parents from their newborn child, allegedly because of a reported failed drug test. Allegedly, a doctor at St. Luke's Hospital told two police officers that Grace Smith tested positive for amphetamines. While Mrs. Smith appears to have been subsequently cleared by the County's Children and Youth Services ("CYS"), Plaintiffs allege that the separation between parents and child on the evening that the test results were reported was a constitutional violation. As the employer of the two police officers on the scene, Plaintiffs claim that Bethlehem Township should be held liable.

 While separation from a newborn child is undoubtedly a traumatic experience for parents, Plaintiffs have failed to state valid claims against Defendant. The allegations against the township are limited to the conduct of its two police officers that evening, who asked Mr. and Mrs. Smith to leave the premises under threat of arrest for defiant trespass.

 Plaintiffs have had multiple opportunities to allege plausible facts that could support a viable claim against this Defendant. They have failed to do so. On this, Plaintiffs' fourth bite of the

1

apple, the Court concludes that Bethlehem Township is not a proper defendant and will be dismissed with prejudice.

## II.     SUMMARY OF ALLEGED FACTS

On April 9th, 2021, Officers Keyock and T. Smith reported to St. Luke's Hospital in response to a call from a doctor there. Compl. ¶ 7. Upon arrival, they went to the Neonatal Intensive Care Unit ("NICU") lobby, where Mr. and Mrs. Smith were present after the birth of their child the previous day. Id. ¶ 10. After speaking with representatives of the hospital, Officer Keyock allegedly informed Mr. and Mrs. Smith that a doctor at St. Luke's Hospital – Dr. Marlino – told Officer Keyock that Mrs. Smith had tested positive for methamphetamines. Id. ¶ 17. Officer Keyock allegedly informed the Mr. and Mrs. Smith that the newborn baby – JAS – had to remain in the hospital's custody until a CYS investigation "cleared" Mrs. Smith. Id. See also Resp. Ex. 4.

Plaintiffs allege that the test failed to distinguish from illegal methamphetamines from legal amphetamines. Compl. ¶ 26. Mr. and Mrs. Smith insisted that they had withdrawn consent for J.A.S's treatment and would get a second opinion elsewhere. Id. ¶ 18. However, Officer Keyock allegedly informed the parents that they would need to leave without the child or they would face arrest for trespass. Id. ¶ 17. Under threat of arrest, the parents left the hospital. Id. ¶ 28.

## III.    LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff. Doe v. Univ. of the Scis., 961 F.3d 203, 208 (3d Cir. 2020). To survive this motion, a plaintiff must include

sufficient facts in the complaint that, accepted as true, "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint is insufficient if it suggests only the "mere possibility of misconduct" or is a "[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (citing Twombly, 550 U.S. at 555). To survive the motion, a plaintiff must "plead 'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for misconduct alleged.'" Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009)).

## IV. RELEVANT PROCEDURAL HISTORY

To this point, Plaintiffs have proceeded pro se in this matter. Plaintiffs proceeded initially in a separate docket, case number 22-1478.[1] On April 11, 2022, Plaintiffs filed an initial complaint under the original case number. ECF 2. The initial complaint was nine-hundred and twenty-five (925) pages long and featured allegations against thirty-nine defendants, including Bethlehem Township, arising out of the same events and occurrences as this case.

On June 16, 2022, the Court ordered Plaintiffs to file an amended complaint within thirty days. ECF 21. Plaintiffs filed the first amended complaint on June 22, 2022. ECF 34. This complaint was nine-hundred and twenty-six (926) pages and listed numerous defendants, again including Bethlehem Township.

---

[1] Until specified below, the ECF numbers in this procedural history correspond to the docket from the original case, 22-1478.

On June 29, 2022, the Court ordered that Plaintiffs file an amended complaint limited to fifty (50) pages double-spaced. ECF 37. On July 11, 2022, Plaintiffs filed a second amended complaint, again including Bethlehem Township. ECF 41.

On July 14, 2022, the Court held a Rule 16 hearing, in which the Court ordered that any subsequent complaint be limited to fifty (50) pages double-spaced. ECF 42.[2] The Court also stated that Plaintiff could file separate complaints against different groups of Defendants. Id. On the same date, the Court ordered that the Second Amended Complaint be stricken from the record and allowed Plaintiffs to file a third amended complaint. ECF 43. On September 14, 2022, Plaintiffs filed a Third Complaint. No. 22-1478, ECF 45. For the first time, Bethlehem Township was not listed as a defendant.

From September 14, 2022, onwards, all filings related to Bethlehem Township were filed under the present case number, 22-3785.[3] On the same date, Plaintiffs filed their initial complaint in this case, listing Bethlehem Township alone as sole Defendant. ECF 1. Defendant filed the instant Motion to Dismiss on November 8, 2022. ECF 9. Defendant filed a reply brief on November 28, 2022, including Plaintiffs' response to the motion as an exhibit. ECF 10. Defendant alleges it had received the response from Plaintiffs, but it had not yet been filed with the Court. Id. On December 6, 2022, Plaintiffs filed the response to the motion with the Court. ECF 11.

---

[2] The transcript of this Rule 16 hearing is filed as ECF 48.
[3] Accordingly, the remaining ECF numbers in the procedural history section correspond to the instant docket.

V.  **DISCUSSION**

Plaintiffs levy a range of constitutional claims against Defendant under 42 U.S.C. § 1983:

A) Violation of Fourth Amendment – Unlawful Seizure;

B) Violation of Fourteenth Amendment Substantive Due Process – Creation of State Created Danger;

C) Violation of Fourteenth Amendment Substantive Due Process – Invasion of Family Privacy;

D) Violation of Fourteenth Amendment Substantive Due Process – Invasion of Medical Privacy; and

E) Violation of Fourteenth Amendment's Protection from State Actors Creating a Special Relationship between a Child and a Private Entity Without Sufficient Cause

Plaintiffs allege that the municipality is liable for each claim under Monell v. Dept. of Social Services, 436 U.S. 658 (1978). Specifically, Plaintiffs allege that each wrongdoing here was the result of at least eighteen (18) patterns, practices, policies, customs, or failures to train. Compl. ¶ 38. But Plaintiffs offer no more than cursory assertions that such policies (or the lack thereof) exist, based solely on the alleged wrongdoing by the officers in this case.[4] There are no factual allegations beyond the alleged conduct of these officers here to support the existence of any policy, custom, or failure to train.

Plaintiffs insist that any lack of evidence regarding patterns, practices, policies, and customs of Bethlehem Township is because discovery has not yet been conducted. Resp. at 13.

---

[4] Plaintiffs adopt a similar approach in alleging that Defendant failed to implement policies that would prevent the events alleged in this complaint. Compl. ¶ 55. Again, no facts are alleged to support this claim beyond the alleged circumstances on the evening of April 9th, 2021.

They concede explicitly that "although at this early stage of litigation it is not possible to say with definition what exact policy was instituted or needs correction, what is certain is that the proof is in the pudding." Id. at 14. But Plaintiffs cannot simply assert their belief – even if in good faith – that *some* municipal policy was responsible for the conduct of the officers here. No facts alleged tie the actions of the officers to the municipality other than their employment by Bethlehem Township. That is plainly insufficient, even at this stage. These allegations are precisely the vague and general allegations reciting the elements of a Monell claim that courts routinely dismiss.[5]

The failure to establish a viable Monell claim defeats all five counts against the Township and is enough to dismiss the complaint in its entirety. Nevertheless, this Court offers a more complete analysis to illustrate that the deficiencies go beyond the failure of Plaintiffs to plead their Monell claim properly. Each claim is defective at its core such that further amendment would be futile. Dismissal with prejudice is appropriate.

### A. Fourth Amendment – Right to be Free from Unlawful Seizure

Plaintiffs allege that the two police officers on the scene seized Plaintiffs by asking Mr. and Mrs. Smith to leave the hospital under threat of a defiant trespass charge. A "seizure requires the use of force with intent to restrain." Torres v. Madrid, 141 S. Ct. 989, 998 (2021). Plaintiffs have alleged no facts that they were seized by use of force at any time.

The right to be free from unlawful seizure does not imply a right to complete unrestricted freedom of movement. Plaintiff parents did not have an unlimited and inherent right to enter the

---

[5] Defendant provides a helpful sample of the extensive case law in the Third Circuit illustrating this established doctrine, which the Court sees no need to repeat in full here. See Reply at 6-7.

NICU in a private hospital at will. Being asked to leave a private hospital, even under threat of arrest, is not a Fourth Amendment seizure as a matter of law. The parents were free to leave the hospital at any time. Further, there are no facts alleged that either officer played a role in St. Luke's Hospital's decision not to release the baby to Plaintiff's custody until the CYS investigation was completed. This claim will therefore be dismissed with prejudice.

### B.     Fourteenth Amendment – Substantive Due Process – Right to be Free of State-Created Danger

Plaintiffs allege that by enforcing the separation of child and parents, the officers are responsible for creating danger or a risk of danger. A central element of this cause of action is the creation of danger or increased vulnerability to danger. Based on Third Circuit precedent, multiple courts in this circuit have concluded that such danger is limited to danger of physical harm. See Melendez v. Shack, No. CIV.A. 12-1925 JLL, 2014 WL 2112365 (D.N.J. May 20, 2014) (examining in detail Third Circuit precedent to conclude that danger in state-created danger claims must be "physical"); see also Holmes v. Geider, No 10–6831, 2011 WL 3497009 at *2 n. 5 (E.D.Pa. Aug.10, 2011) ("Because [plaintiff] has not alleged any harm resulted from Defendants' actions, except for his emotional distress, he also does not have a claim under the state-created danger theory"); Wright v. Evans, No. 07–3725, 2009 WL 799946 at *10 (D.N.J. Mar. 24, 2009) (suggesting that a state-created danger claim is viable only when the plaintiff is physically harmed). There are no facts alleged showing that the child or parents were put at risk of physical danger by the police. Baby JAS remained under diligent medical supervision for possible neonatal medical conditions. There are no facts alleged that the officers threatened the parents with harm beyond arrest.

Even if the Court did consider danger of emotional hardship, a viable state-created danger

7

claim requires that the state actor acted with culpability that shocks the conscience. Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006). Here, the facts alleged suggest the officers responded to a report by a medical professional that Mrs. Smith failed a drug test and asked the parents leave the hospital under threat of arrest while an investigation was conducted. There are no facts alleged that suggest that the officers or the township took custody of the child rather than the hospital.[6] By asking the parents to leave the private hospital (even under threat of trespass charge), the officers were simply doing their job. No facts alleged suggest the officers' conduct in the process was wrongful, let alone that it would shock the conscience of a reasonable jury. Thus, Plaintiff's claim will be dismissed with prejudice.[7]

### C. Fourteenth Amendment – Substantive Due Process – Violation of Right to be Free from Government Intrusion into Family Privacy, Including the Birth of a Child

Plaintiffs base this claim on the role the officers allegedly played in enforcing the separation of child and parents. The compelling government interest in protecting children limits the constitutional liberty interest in family privacy. Croft v. Westmoreland Cnty. Child. & Youth Servs., 103 F.3d 1123, 1125 (3d Cir. 1997). State intervention is warranted when the information available to Defendants at the time creates an "objectively reasonable suspicion" of "imminent danger" to the child "justifying the degree of interference." Id. at 1126.

At the time, Plaintiffs allege that the officers were told by a doctor that the mother tested positive for methamphetamines, triggering the hospital's obligations to take temporary custody

---

[6] Plaintiffs make cursory assertions that the officers separated the parents from their child, but no facts alleged actually point to the police taking custody or making any custody determinations here.

[7] Plaintiffs suggest that Defendant concedes several of the elements of this claim. This is not evident in the briefs.

of the child during an investigation and notify Child and Youth Services. Despite Plaintiffs' conclusory contentions that the police were responsible for the separation of parents and children, the allegations only suggest that the officers' role was limited to ensuring that the two parents left the hospital. No facts are alleged that the police made any decisions granting or withholding custody. Thus, there was no intrusion into family privacy by the police.

Analyzing this alleged intrusion under the Third Circuit standard, the doctor's alleged statement to the police that Mrs. Smith had tested positive for methamphetamines may provide "reasonable and articulable evidence giving rise to a reasonable suspicion" of potential, imminent danger to the child. Croft, 103 F.3d at 1126. Whether or not this was true, the facts alleged do not show any intrusion by the officers into family privacy. Thus, the officers did not violate substantive due process under the established Third Circuit's standard and Plaintiffs' claim fails as a matter of law.

### D. Fourteenth Amendment – Substantive Due Process – Violation of Right to Privacy in Personal and Confidential Medical Records

Plaintiffs allege that disclosure of the test results in front of members of the public (and in a public police report) violated Plaintiffs' rights to medical privacy. There is no constitutional protection for materials disclosed in the absence of an individual's reasonable expectations of confidentiality. Talley v. PA Dept. of Corrections, 791 Fed. Appx. 291, 293 (3d Cir. 2019) (quoting Fraternal Order of Police, Lodge No. 5 v. City of Phila., 812 F.2d 105, 112 (3d Cir. 1987). A patient does not have a reasonable right of privacy for information that suggests possible direct risk to a newborn child from harmful drugs in the blood, particularly when it points to a possible need for immediate intervention by state authorities – such as a positive test

designed to screen for methamphetamines. Even if hindsight reveals that the test was likely a "false alarm", this does establish any wrongful conduct by the officers, who took it seriously.

Even if Plaintiffs are correct when they allege that the officers should not have stated this information in front of members of the public, there is no municipal liability implicated here. No factual allegations by Plaintiffs suggest that the disclosure of this information itself was subject to a policy, practice, or pattern of failure to train. Plaintiffs' allegations only point to the existence of an isolated incident and are insufficient to establish a pattern establishing a custom, policy, practice, or failure to train related to the improper disclosure of information in front of members of public. Accordingly, this is a pure "respondeat superior" claim, which is impermissible and therefore fails. Monell v. Dept. of Social Services, 436 U.S. 658, 694 (1978).

### E. Fourteenth Amendment – Violation of Protection from State Actors Creating a Special Relationship between a Child and a Private Entity Without Sufficient Cause

Based on the complaint, Plaintiffs allege that the officers were responsible for creating a special relationship between the hospital and the child. Plaintiffs rely primarily on Nicini v. Morra, 212 F.3d 798, 808 (3d. Cir. 2000) to contend that this violates the Fourteenth Amendment. But that case is clearly distinguishable. There, the state put the child in the custody of a private entity. Here, no facts alleged suggest that the officers affirmatively *created* a special relationship between the child and the private and special entity. The facts alleged in the complaint suggest the hospital took custody of the child – custody was not given to them by the officers. The officers did not create any relationship by removing the two parents from the hospital, nor can it be called a de facto custody decision that can be attributed to either Bethlehem Township or the officers.

## VI. CONCLUSION

While Plaintiffs have opted to throw the kitchen sink by alleging a wide range of claims, the Court has construed Plaintiffs' claims in this complaint liberally and given every opportunity to present valid claims against this Defendant.  Plaintiffs have repeatedly failed to do so.  The amended complaint against this Defendant is patently insufficient.  Thus, the Court will dismiss this case with prejudice.  An appropriate order follows.